UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JANE DOE,

        Petitioner,

v.                                   Case No. 18-C-1672

DAVID G. BETH,

        Respondent.

**DECISION AND ORDER GRANTING PETITION
FOR WRIT OF HABEAS CORPUS**

Petitioner Jane Doe filed a petition for federal relief pursuant to 28 U.S.C. § 2241 on October 21, 2018, seeking release from her continued civil detention during the course of her removal proceedings under 8 U.S.C. § 1226(c) or, in the alternative, that she be granted an individualized bond hearing. Petitioner alleges she has been detained by Immigration and Customs Enforcement (ICE) for now over thirty-one months without an individualized bond hearing and that her continued detention violates the Due Process Clause of the Fifth Amendment. Petitioner seeks a writ ordering her immediate release or, alternatively, ordering her release within 30 days unless Respondent schedules an individualized bond hearing before an Immigration Judge at which the Government bears the burden of showing her continued detention is justified. For the reasons that follow, Doe's petition will be granted.

**BACKGROUND**

Petitioner is a native and citizen of Mexico who entered the United States to join her husband without being admitted or paroled after inspection by an immigration officer in August of

2005.  In other words, Petitioner entered the country illegally.  On or about April 1, 2014, Petitioner was arrested for money laundering offenses in violation of state law by the Aurora, Illinois Police Department.  While she was in the custody of local authorities, ICE agents became aware of her presence in the country illegally and lodged a detainer with the custodian.

On October 14, 2015, Petitioner pleaded guilty to the state law crime of money laundering and was sentenced to six years imprisonment with the Illinois Department of Corrections (IDOC), with 561 days credited for presentence incarceration.  On September 13, 2016, after she had served 2.5 years of her sentence, IDOC transferred Petitioner to ICE custody based on the detainer.

Petitioner was initially served with an Administrative Order of Removal (Form I-851).  The I-851 was cancelled, however, and on or about September 26, 2016, the Enforcement and Removal Office (ERO) issued a Notice to Appear (NTA) charging Petitioner with inadmissibility pursuant to 8 U.S.C. § 1182(a)(6)(A)(I) for being present without being admitted or paroled, and 8 U.S.C. § 1182(a)(2)(A)(i)(I) for having been convicted of a crime involving moral turpitude.

An immigration judge sustained the charges contained in the NTA and ordered Petitioner removed.  Petitioner sought relief from removal by filing applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).  In support of her applications for asylum, withholding of removal, and protection under the CAT, Petitioner and her sister testified that their uncle and his family "are involved with a cartel in Mexico." Dkt. No. 2-1 at 5.  She states in 2007, her uncle's son murdered her brother.  In 2009, her uncle's son was killed, and he blamed another of her brothers and "promised to take out revenge on [her] entire family." *Id.*  More specifically, he vowed to "finish the entire [ ] family and that he would start with the men and finish with the women."  *Id.*  Since that time, her father and three of her brothers have been

murdered. As a result, she and her sisters live in fear of her uncle. The immigration judge found Petitioner and her sister credible, accorded "full weight and consideration" to their testimony, and on April 17, 2017, granted Petitioner's application under the CAT.

The Department of Homeland Security (DHS) appealed, and in September of 2017 the Board of Immigration Appeals (BIA) remanded Petitioner's case for further proceedings to produce a more comprehensive record because it found the record too incomplete and speculative to provide a meaningful basis for appellate review. On remand, Petitioner presented expert testimony in support of her claim and the Immigration Judge again found the evidence sufficient to warrant protection under the CAT and granted her application for deferral.

DHS again appealed, and the BIA remanded the case on June 18, 2018, holding that additional fact-finding and reconsideration was necessary on two issues: 1) whether the Mexican government would likely acquiesce in Petitioner's torture upon her return to Mexico, and 2) Doe's ability to safely relocate within Mexico. During the course of her removal process, Petitioner's criminal sentence expired and her parole was discharged on September 13, 2018.

Subsequent to the filing of the petition, the Immigration Judge held a hearing on November 27, 2018, to address the two issues identified by the BIA on remand. On December 20, 2018, the Immigration Judge issued a decision finding that, based on the testimony of Petitioner's expert, the Mexican government would likely acquiesce in her torture and safely relocating within Mexico was not possible. Consequently, the Immigration Judge held that Petitioner met her burden to establish eligibility for deferral of removal under the CAT. At a status conference, DHS stated that they intend to appeal the Immigration Judge's decision. To date, as far as the court is aware, the BIA has not issued a decision on the appeal.

3

## ANALYSIS

Because she was convicted of an aggravated felony, Petitioner is subject to mandatory custody during the course of her removal proceedings under 8 U.S.C. § 1226(c). That section "mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes." *Jennings v. Rodriquez*, 138 S. Ct. 830, 847 (2018). In *Jennings*, the Court rejected the argument that the statutory interpretation principle of constitutional avoidance required reading into the statute the right to a bail hearing for individuals whose detention was prolonged so as to avoid due process concerns. Instead, the Court held that the plain language of the statute is unambiguous and "together with § 1226(a), § 1226(c) makes clear that detention of aliens within its scope *must* continue 'pending a decision on whether the alien is to be removed from the United States.'" *Id*. at 846 (emphasis in original) (quoting § 1226(a)). The *Jennings* Court stated that, "by allowing aliens to be released 'only if' the Attorney General decides that certain conditions are met, § 1226(c) reinforces the conclusion that aliens detained under its authority are not entitled to be released under any circumstances other than those expressly recognized by the statute." *Id.*

While *Jennings* forecloses a facial challenge to the constitutionality of § 1226(c), Petitioner is bringing an as-applied challenge, arguing that § 1226(c)'s mandatory detention is unconstitutional as applied to her specifically because her detention has become prolonged and indefinite. In support of this argument, Petitioner points to *Zadvydas v. Davis*, 533 U.S. 678 (2001), where the Court, applying constitutional avoidance, read an implicit 6-month time limitation into detention under 8 U.S.C. § 1231—which addresses detention, release, and removal of aliens ordered removed—once removal is no longer reasonably foreseeable because "post-removal-period detention, unlike

4

detention pending a determination of removability or during the subsequent 90-day removal period, has no obvious termination point." *Zadvydas*, 533 U.S. at 697. Interpreting the statute to "avoid a serious constitutional threat," the Court concluded that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute, " *id.* at 699, because where "detention's goal is no longer practically attainable, detention no longer bears a reasonable relation to the purpose for which the individual was committed." *Id.* at 690.

Unlike post-removal-period detention, however, detention under § 1226(c) during the course of removal proceedings "necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Demore v. Kim*, 538 U.S. 510, 528 (2003). In *Demore*, the Court rejected a facial challenge to 8 U.S.C. § 1226(c), and distinguished detention under § 1226(c) from detention under § 1231, as well as from *Zadvydas*, on two grounds. First, unlike the detention in *Zadvydas*, where the Court held that continued detention after final orders of removal no longer served its purported immigration purposes because removal was "no longer practically attainable," *Zadvydas*, 533 U.S. at 690, § 1226(c) "governs detention of deportable criminal aliens *pending their removal proceedings*. Such detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Demore*, 538 U.S. at 527–28 (emphasis in original). And second, "[w]hile the period of detention at issue in *Zadvydas* was 'indefinite' and 'potentially permanent,' the detention here is of a much shorter duration." *Id*. at 528 (quoting *Zadvydas*, 533 U.S. at 690–91). At the time *Demore* was decided "[t]he detention at stake under § 1226(c) last[ed] roughly a month and a half in the vast

majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." *Id.* at 530.

Although the Seventh Circuit has not addressed the question of as-applied challenges to § 1226(c) post-*Jennings*, in *Gonzalez v. O'Connell*, 355 F.3d 1010, 1019–20 (7th Cir. 2004), the court acknowledged that *Demore* and *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999), "left open the question of whether mandatory detention under § 1226(c) is consistent with due process when a detainee makes a colorable claim that he is not in fact deportable." *Gonzales*, 355 F.3d at 1019–20. But that is not Petitioner's claim here. She concedes she is removable based on her illegal entry and her conviction for an aggravated felony; Petitioner seeks relief from removal either in the form of asylum or under the CAT. The crux of Petitioner's challenge to her continued detention is that it has become prolonged and indefinite. In particular, Petitioner points out that the length of her detention significantly exceeds the one-and-a-half to five-month period of detention contemplated by the Court in *Demore*. Petitioner has been detained now for over thirty-one months.

Notwithstanding the fact that Petitioner's detention has lasted a significant amount of time, her continued confinement continues to serve the purpose of the statute—"preventing deportable criminal aliens from fleeing prior to or during their removal proceedings." *Demore*, 538 U.S. at 528. In affirming that "the narrow detention policy reflected in 8 U.S.C. § 1226(c)" does not violate due process on its face, *Demore* re-affirmed the Court's "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* at 526. While "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," *Reno v. Flores*, 507 U.S. 292, 306 (1993), the Supreme Court has recognized "detention during deportation proceedings as a constitutionally valid

aspect of the deportation process." *Demore*, 532 U.S. at 523. Thus Petitioner's continued detention, albeit lengthy, is still in line with the scope and purpose of § 1226(c).

And unlike the petitioners in *Zadvydas*, Petitioner's continued detention is not indefinite; there is a definite and identifiable end point—the issuance of a final decision regarding whether her removal will be deferred. In *Zadvydas*, the continued civil confinement of Zadvydas and Kim Ho Ma was essentially indefinite because although both had been ordered removed, the likelihood of them actually ever being deported to another country was quite low or non-existent as no other country would accept them. As a result, there was no definite end point to their detention. *See Zadvydas*, 533 U.S. at 691 ("The civil confinement here at issue is not limited, but potentially permanent."). Here, Petitioner does not claim that no final determination as to whether her removal will be deferred will be made, nor can she. Rather Petitioner's argument is that in essence her detention is indefinite because it has continued for a significant period of time and it is unclear how much longer the process will take. But that does not alter the fact that the process will come to an end and a final decision will be made.

Despite these significant differences in Petitioner's detention under § 1226(c) and that of the petitioners in *Zadvydas*, a growing number of district courts, including two in this circuit, have granted habeas relief to similarly situated petitioners by ordering that individualized bond hearings be held. *See, e.g.*, *Reinis v. Rodriguez*, No. CV 18-12529 (KM), 2019 WL 1789515 (D.N.J. Apr. 22, 2019) (22-month detention); *Oscar B. v. Warden, Essex Cty. Corr. Facility*, No. CV 18-11524 (KM), 2019 WL 1569822 (D.N.J. Apr. 10, 2019) (16-month detention); *Fremont v. Barr*, No. 18-CV-1128, 2019 WL 1471006 (W.D.N.Y. Apr. 3, 2019) (12-month detention); *Gomes Herbert v. Decker*, No. 19-CV-760 (JPO), 2019 WL 1434272 (S.D.N.Y. Apr. 1, 2019) (8-month detention);

*Liban A.D. v. Rodriguez*, No. CV 18-6023 (ES), 2019 WL 1411062 (D.N.J. Mar. 28, 2019) (18-month detention); *Vargas v. Beth*, No. 19-CV-92, 2019 WL 1320330, at *8 (E.D. Wis. Mar. 22, 2019) (9-month detention); *Liban M.J. v. Sec'y of Dep't of Homeland Sec.*, No. 18-CV-1843 (NEB/ECW), 2019 WL 1238834 (D. Minn. Mar. 18, 2019) (12-month detention); *Carlos L. C. v. Green*, No. CV 18-8670 (KM), 2019 WL 1110388 (D.N.J. Mar. 11, 2019) (27-month detention); *Oscar C. L. v. Green*, No. CV 18-9330 (KM), 2019 WL 1056032 (D.N.J. Mar. 6, 2019) (21-month detention); *Gonzalez v. Bonnar*, No. 18-CV-05321-JSC, 2019 WL 330906 (N.D. Cal. Jan. 25, 2019) (12-month detention); *Carlos A. v. Green*, No. CV 18-13356 (SDW), 2019 WL 325543 (D.N.J. Jan. 25, 2019) (18-month detention); *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 859 (D. Minn. 2019) (19-month detention); *Baez-Sanchez v. Kolitwenzew*, 360 F. Supp. 3d 808, 816 (C.D. Ill. 2018) (48-month detention); *Rosales v. Lowe*, No. 1:18-CV-1302, 2018 WL 6650304 (M.D. Pa. Dec. 19, 2018) (14-month detention); *Cabral v. Decker*, 331 F. Supp. 3d 255 (S.D.N.Y. 2018) (7-month detention); *Muse v. Sessions*, No. 18-CV-0054 (PJS/LIB), 2018 WL 4466052 (D. Minn. Sept. 18, 2018) (14-month detention); *Thompson v. Edwards*, No. CV 18-1006 (ES), 2018 WL 4442225 (D.N.J. Sept. 17, 2018) (26-month detention); *Vega v. Doll*, No. CV 3:17-1440, 2018 WL 3756755 (M.D. Pa. Aug. 8, 2018) (21-month detention); *Hernandez v. Decker*, No. 18-CV-5026 (ALC), 2018 WL 3579108 (S.D.N.Y. July 25, 2018) (9-month detention); *Portillo v. Hott*, 322 F. Supp. 3d 698 (E.D. Va. 2018) (14-month detention); *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266 (S.D.N.Y. May 23, 2018) (8-month detention).

All or most of these cases have relied in part on a portion of Justice Kennedy's concurrence in *Demore*. There, Justice Kennedy wrote:

> [S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified. *Zadvydas*, 533 U.S., at 684–686 (KENNEDY, J., dissenting) ("[A]liens are entitled to be free from detention that is arbitrary or capricious"). Were there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons.

538 U.S. at 532–33 (Kennedy, J., concurring). Petitioner, and those courts that agree with her, fasten upon this language as mandating a bond hearing when the period of detention becomes extended. As far as I have been able to determine, no higher court has held to the contrary.

Here, I conclude that the period over which Petitioner has been detained has become extended such that a bail hearing is constitutionally required. In reaching this conclusion, I have not only considered the length of Petitioner's detention, but also the fact that the immigration judge has ruled in Petitioner's favor three times on her application for relief under the CAT, and the continued delay is due to the BIA's fourth appeal of what in large part appears to be a credibility determination. On this record, it cannot be reasonably argued that Petitioner's claim of likely torture or death is implausible. *See Mauricio Gonzalez Ruano v. Barr*, No. 18-2337, ___ F.3d ___, 2019 WL 1785492 (7th Cir. 2019) (holding that alien was persecuted by Mexican drug cartel due to membership in social group comprised of his wife's immediate family, warranting asylum). While the BIA is certainly entitled to appeal, at some point the continuation of the proceeding may as a practical matter approach the indefinite mark that has mandated a bail hearing in so many other cases. We have reached that point here. Under the circumstances of this case, due process demands that the Government show that continued detention is necessary to prevent Petitioner from flight or protect the public from danger.

**CONCLUSION**

For the foregoing reasons, Doe's petition (ECF No. 2) is **GRANTED**. Respondent is directed to provide Petitioner with an individualized bond hearing consistent with this order before an appropriate officer or immigration judge within thirty (30) days of this order.

**SO ORDERED** at Green Bay, Wisconsin this  29th  day of April, 2019.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
